FILED

2013 Oct-24  PM 02:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| DARRIOUS MABRY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  4:13-cv-00199-KOB-HGD |
| | ) | |
| MATTHEW MOORE, et al., | ) | |
| | ) | |
| Defendants | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Darrious Mabry, hereinafter referred to as plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at the St. Clair Correctional Facility in Springville, Alabama. Plaintiff names as defendants COI Matthew Moore and Warden Carter Davenport. Plaintiff seeks injunctive relief and money damages.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.   *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## FACTUAL ALLEGATIONS

On October 29, 2012, COI Moore was the cubicle officer for the plaintiff's assigned living quarters, Q-1 block.  Defendant Moore released the Q-1 block for dinner at approximately 5:00.  When the plaintiff returned from the dining hall with a piece of cake, Moore confronted him about it and started arguing with and threatening him.

The plaintiff returned to the dining hall and reported the incident to Sgt. Northcutt, the supervisor on duty, who in turn directed the plaintiff to the security

supervisor, Sgt. Heflin.  The plaintiff went to the shift office and reported the incident to Sgt. Heflin, who  told the plaintiff he would take care of the matter once dinner was over, and instructed the plaintiff to report to another housing unit until that time.  As the plaintiff left the shift office, he ran into COI Christian, who sent him back to Q-1 block without allowing him to explain the situation.

The plaintiff had no choice but to return to his cellblock where he again encountered defendant Moore.  Moore began the argument anew.  After the plaintiff told Moore that he had reported the incident to the shift supervisor, who said he would resolve the matter after dinner, Moore became enraged.  Moore left his security post, entered the dorm, and began to attack the plaintiff.  As a result of this attack, the plaintiff suffered a broken nose, split lip and broken tooth, an injury to his eye, and several contusions on his head, as well as mental stress and the fear of further retaliation by other officers.

In an attempt to cover up his misconduct, Moore falsely accused the plaintiff of assaulting him and conspired with the hearing officer to find the plaintiff guilty, even though the plaintiff had acted only in self defense.  The plaintiff suffered mental anguish as a result of being placed in segregation and having been charged with and found guilty of assaulting a DOC official.

Warden Davenport is responsible for the overall administration of St. Clair Correctional Facility.  In the two years Davenport has been at St. Clair, the overall violence level therein has escalated greatly: there have been several murders, 30-40 stabbings, and in the 90 days prior to the filing of the plaintiff's lawsuit, there had been four fights between correctional officers and inmates.  Under the leadership, training, and direction of Warden Davenport, the guards have begun to act with impunity towards the inmates because they know they will not be held accountable for their actions.

DISCUSSION

I.    <u>Excessive Force</u>

The plaintiff alleges that defendant Moore violently assaulted and injured him without justification or provocation.  The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  An excessive-force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities" and (2) a subjective showing that the official had a "sufficiently culpable state of mind." *Thomas v. Bryant*, 614

F.3d 1288, 1305 (11th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (other citations omitted)).

The Supreme Court has held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

The factors to be examined in determining whether the use of force was wanton and unnecessary include an evaluation of: (1) the need for the application of the force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of the response, and (5) the extent of the injury suffered by the inmate. *Hudson v. McMillian*, 503 U.S. at 7.

It is well settled that maintaining institutional security and preserving internal order and discipline are essential goals of a prison administration and may require limitation or retraction of the constitutional rights of prisoners. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 47 (1979). Prison officials must therefore be free to take appropriate action to insure the safety of inmates and staff, and the courts will

not normally second-guess prison officials on matters involving internal security. *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998).   Accordingly, when considering the five *Hudson* factors, courts should "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance," and examine the facts as reasonably perceived by defendants on the basis of the facts known to them at the time. *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (citations omitted).

Although the plaintiff admits taking a piece of cake from the dining hall, which appears to be against prison regulations, there are no facts to suggest that the use of any force was needed.  The facts pled by the plaintiff are sufficient to require a further response from defendant Moore as to the excessive force claim.

II.    Abuse of Process/False Disciplinary Charges

The plaintiff also alleges that Moore filed false disciplinary charges against him in order to cover up his own criminal conduct, then conspired with the hearing officer to find the plaintiff guilty.  As a result, the plaintiff asserts he was unjustly found guilty and placed in segregation, causing him to suffer much mental anguish.

This contention is insufficient to state a claim of constitutional proportion. Prison inmates have no constitutionally guaranteed immunity from being falsely or wrongly accused; even the filing of unfounded charges against an inmate does not *per*

*se* give rise to a constitutional violation under §1983. Instead, an inmate has a right not to be deprived of a protected liberty interest without due process of law. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988). The minimum procedural due process protections[1], as set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), allow a prisoner to defend against improper or false disciplinary charges by affording the inmate the opportunity to explain his version of the facts to the disciplinary officer. *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984).

Although the plaintiff argues that the process was not fair, and contends that Moore conspired with the hearing officer to find him guilty, not only does the plaintiff fail to explain how the process was unfair, but the punishment did not implicate a liberty interest protected by the Due Process Clause.

While an inmate has a right not to be deprived of a protected liberty interest without due process of law, to prevail on a claim that confinement in segregation violated his constitutional right to due process, a plaintiff must establish that he had a liberty interest in being free from confinement in disciplinary segregation. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995) ("The requirements of procedural due

---

[1] The minimum requirements outlined in *Wolff* are: (1) the inmate be given written notice of the charges, (2) the fact-finders issue a written statement outlining the evidence relied upon and the reasons for any disciplinary action, and (3) the inmate be allowed to call witnesses and present documentary evidence, provided it will not be unduly hazardous to institutional safety or correctional goals. 418 U.S. at 564-566.

process apply only to the deprivation interests encompassed by the Fourteenth Amendment's protection of liberty . . . ." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)).

The U.S. Supreme Court in *Sandin v. Conner* concluded that segregation as a form of punishment was not a "dramatic departure" from the ordinary conditions of incarceration and, as such, did not amount to a grievous loss of a "substantive" interest protected by Constitution. 515 U.S. at 486.  Instead, mere disciplinary segregation is the type of punishment an incarcerated individual should expect, and one that is ordinarily not a major change in his living conditions.

In the present case, the plaintiff makes no allegation that his confinement in segregation presented "the type of atypical, significant deprivation [that] might conceivably create a liberty interest," *Sandin,* 515 U.S. at 486, or that the time in disciplinary segregation constituted a "dramatic departure" from the ordinary conditions of confinement for the general prison population.  *Id.* at 458.  While the conditions of disciplinary segregation are less amenable and certainly more restrictive, the plaintiff has not established that the conditions in disciplinary segregation, compared with conditions in general population, created a "major disruption" in his environment or unexpectedly exceeded his sentence in a manner

that would evoke the protections of the Due Process Clause. *Id.* at 486-87. Thus, this claim is due to be dismissed.

III.   <u>Warden Davenport</u>

The plaintiff seeks to implicate Warden Davenport because under his tenure the conditions of the prison have deteriorated and become much more violent.

The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is "extremely rigorous." *Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). Supervisory personnel may be held accountable for the constitutional violations of their subordinates upon proof that they (1) were directly involved in the wrongdoing, (2) failed to remedy a wrong after learning of it through report or appeal, (3) created or allowed a policy under which the violation occurred, or (4) were grossly negligent in managing the subordinates who caused the wrongdoing. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). A history of widespread abuse by a subordinate may be enough to put a supervisor on notice sufficiently to establish §1983 liability for the subordinate's actions, provided those abuses are "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Id.* at 802, *citing Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

At this juncture, a response from Warden Davenport regarding the frequency of altercations between officers and inmates, and the administrative steps that are taken to prevent and investigate such incidents, is warranted.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above, the magistrate judge RECOMMENDS that the false disciplinary/conspiracy claims against COI Moore be DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2). The magistrate judge further RECOMMENDS that the excessive force claims against COI Moore and Warden Davenport be referred to the undersigned magistrate judge for further proceedings.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any contention raised in the complaint or petition also must be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*). In order to challenge the findings of the magistrate judge, a party

must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  Objections not meeting this specificity requirement will not be considered by a district judge.  IT IS NOT NECESSARY FOR PLAINTIFF OR PETITIONER TO REPEAT HIS LEGAL ARGUMENTS. AS TO THE FACTS, IF PLAINTIFF OR PETITIONER DOES RESPOND, HE SHOULD LIMIT HIMSELF TO ADDRESSING THE STATEMENTS OF FACT CONTAINED IN THE REPORT AND RECOMMENDATION TO WHICH HE OBJECTS.  HE ALSO SHOULD OBJECT TO ANY FACTS NOT INCLUDED IN THE REPORT AND RECOMMENDATION WHICH HE CONTENDS SHOULD HAVE BEEN INCLUDED.  THE FILING OF OBJECTIONS IS NOT A PROPER VEHICLE TO MAKE NEW ALLEGATIONS OR PRESENT ADDITIONAL EVIDENCE.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing

only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation upon the plaintiff.

DONE this 24th day of October, 2013.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE